UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TARA B. SIMS,                                      16-CV-435-LJV-MJR

                            Plaintiff,             REPORT AND RECOMMENDATION

            -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

                            Defendant.
_____

       This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo

pursuant to 28 U.S.C. §636(b)(1) for the preparation of a report and recommendation on

dispositive motions.  (Dkt. No. 15).

       Plaintiff Tara B. Sims brings this action pursuant to 42 U.S.C. §§405(g) and

1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security denying her Supplemental Security Income Benefits ("SSI") under the Social

Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, it is

recommended that Sims' motion (Dkt. No. 14) be granted, the Commissioner's motion

(Dkt. No. 19) be denied, and this matter be remanded to the Commissioner for further

administrative proceedings consistent with this Report and Recommendation.

---

[1]     The previously named defendant, Carolyn W. Colvin, is no longer serving as the Acting
Commissioner of Social Security.  The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND

### I.    *Procedural History*

On September 17, 2008, Sims filed an application for SSI alleging disability since her date of birth, March 13, 1989, due to a learning disability, depression, drug use, a knee problem, allergies, and occasional migraine headaches.  (*See* Tr. 146, 338-40, 371).[2]  Sims' SSI application was denied on February 2, 2009 (Tr. 146, 194-97), after which she requested a hearing before an Administrative Law Judge (Tr. 198-200).  On October 1, 2010, Sims, represented by counsel, appeared before Administrative Law Judge Stanley A. Moskal, Jr. ("ALJ Moskal") for a hearing.  (Tr. 116-40).  On March 17, 2011, ALJ Moskal issued a decision denying Sims' SSI claim (Tr. 147-60), but the Appeals Council later granted Sims' request for review and remanded her case for further proceedings (Tr. 161-64).  ALJ Moskal held a second hearing on November 28, 2012 (Tr. 91-115) before issuing another unfavorable decision on February 7, 2013 (Tr. 165-88).  The Appeals Council once again granted Sims' request for review and remanded her case for further proceedings.  (Tr. 189-93).  On February 6, 2015, Sims appeared for a third hearing, this time before Administrative Law Judge William M. Weir ("ALJ Weir").  (Tr. 43-90).  ALJ Weir denied Sims' claim on June 8, 2015.  (Tr. 16-42).  Sims requested review by the Appeals Council (Tr. 15), but this time the Appeals Council denied her request, making ALJ Weir's decision the final decision of the Commissioner (Tr. 1-7).  This action followed.

---

[2]    References to "Tr." are to the administrative record in this case.  In her memorandum of law (Dkt. No. 14-1 at 23-24), Sims asks the Court to strike from the administrative record a report summarizing a telephone conversation between a disability examiner and one of Sims' counselors (Tr. 390-91).  Under the Act, the Commissioner must file "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. §405(g).  Sims has not cited any legal authority authorizing the Court to strike documents from this record.  Accordingly, Sims' request to strike the report should be denied.

II.     _Summary of the Evidence as it Relates to Sims' Mental Impairments_[3]

    A.  _Medical Evidence_

The Court will briefly summarize the medical evidence in the record as it relates to Sims' mental impairments.

In August 2008, a month before she applied for SSI, Sims underwent an initial assessment at the Dale Association.  Sims reported depression, anger, past rapes, and feeling suicidal, and she acknowledged using alcohol and marijuana.  She was diagnosed with depression.  (Tr. 489-97).  An October 2008 psychiatrist's report from the Dale Association indicates that Sims was evaluated there for ongoing depression and increased crying and panic.  Sims reported sexual abuse as a child and having been raped in 2003 and 2008.  She was diagnosed with major depression, PTSD, and panic disorder with some agoraphobia.  She was prescribed Zoloft.  (Tr. 498-99).  Sims was discharged from the Dale Association in November 2008 for non-attendance.  (Tr. 531-32).

Also in October 2008, Sims began visiting Northpointe Council for alcohol and marijuana abuse.  She was discharged in February 2009 due to lack of attendance.  Sims used alcohol and marijuana while in treatment at Northpointe, and she did not complete any of her treatment goals.  (Tr. 586-90).

In November 2008, Sims visited Dr. Renee Baskin for an adult psychiatric consultative evaluation in connection with her SSI claim.  Dr. Baskin diagnosed Sims with depressive disorder, anxiety disorder, and polysubstance dependence in remission.  She opined that Sims has minimal to no limitations in following and understanding simple

---

[3]     Although Sims alleges physical impairments, she does not challenge the Commissioner's disability determination as it relates to those impairments.

directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks with supervision, relating adequately with others, and appropriately dealing with stress, and moderate limitations in making appropriate decisions. (Tr. 543-47).

In February 2009, state agency medical consultant Dr. D. Mangold completed a mental residual functional capacity assessment indicating that Sims is not significantly limited or only moderately limited in most mental activities, but markedly limited in the ability to understand, remember, and carry out detailed instructions. Dr. Mangold opined that Sims retains the mental ability to perform simple repetitive work so long as she abstained from abusing alcohol and marijuana. (Tr. 569-73).

In March 2009, Sims visited Highgate Medical Group for depression and sleep problems. The medical staff diagnosed Sims with depressive disorder and directed her to take Zoloft, continue with counseling, and work on her sleep pattern. (Tr. 671-72). In July 2010, following the birth of her son, Sims visited Dr. Daniel Trock, her primary care physician at Highgate. Dr. Trock put Sims back on Zoloft while noting that Sims' baby appeared to be well cared for. (Tr. 681). Sims visited Dr. Trock for postpartum depression in September 2010, at which time she requested one year of disability secondary to depression because she felt that "raising an infant with her depression and having to work at the same time [would] be a major burden" for her. Dr. Trock wrote a letter on behalf of Sims stating that although she "has been stabilized in regards to her depression," she "is suitable for temporary total disability secondary to postpartum status and ongoing depression." (Tr. 684-85). Sims followed up with Dr. Trock regarding depression and

anxiety in December 2010, and Dr. Trock increased her dosage of Sertraline, an anti-depressant.  (Tr. 692).

Sims visited the Niagara County Department of Mental Health in the fall of 2010 for a mental health assessment and treatment.  She developed a treatment plan to decrease her depression and anxiety, but she was discharged from the program for non-attendance.  (Tr. 591-92, 781-84).

In August 2011, Sims visited Dr. Trock complaining of increased fatigue.  Dr. Trock began to taper Sims' Zoloft and started her on another depression medication, Cymbalta. (Tr. 701-02).  One month later, in September 2011, Sims reported that her depression was stable on her current medication.  (Tr. 703-05).  However, Sims stopped taking her Cymbalta in July 2012, which caused her to experience anxiety and irritability.  Dr. Trock prescribed a different depression medication, Lexapro.  (Tr. 727-28).  At an appointment in September 2012, Sims' depressive disorder was found to be stable on her current dosage of Lexapro.  (Tr. 831-33).

Sims sought counseling at Catholic Charities for depression and anxiety in November 2012.  A mental status examination was performed, and Sims was diagnosed with depressive disorder.  Sims' Global Assessment of Functioning ("GAF") score at the time was 55, with a high of 65 in the past year.[4]  (Tr. 834-40).

---

[4]    The GAF scale is used to report an individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. rev. 2000).  A GAF score in the range of 51 to 60 indicates "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)."  *See id.* at 34.  A GAF score in the range of 61 to 70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *See id.*

At an appointment with Dr. Trock in March 2013, Sims reported that she might be bipolar.  Dr. Trock diagnosed bipolar disorder, continued Sims on her anti-depressant medication, and referred her to psychiatry regarding "possible bipolar disease."  (Tr. 937-38).

Sims attended mental health counseling at Horizon Health Services between June 2013 and January 2014 (see Tr. 970, 994), but the underlying treatment notes are not in the record.  According to a discharge letter dated January 29, 2014, some of Sims' goals, including her "primary goals," were met during treatment.  (Tr. 926-27).

Sims returned to Horizon in October 2014 for a comprehensive behavioral health assessment.  Sims reported that she was returning for treatment "now that she has insurance coverage and time to come to therapy."  The examining mental healthcare provider, Emily Shields, noted that Sims' alcohol abuse was priority one, although Sims claimed that she had not used alcohol since April 2013.  Priority two was Sims' marijuana use, although Sims claimed to have last used it in September 2014.  On mental status exam, Sims displayed clear and coherent speech, euthymic affect, tangential thought process, appropriate thought content, impaired insight, and good judgment. Treatment and further assessment were deemed necessary.  (Tr. 968-93).  Sims received counseling at Horizon through December 2015 (see Tr. 994, 1004), but the treatment notes for these visits are not in the record.  The record does, however, contain a psychiatric medical exam from November 9, 2015 indicating that Sims had appropriate behavior, fair eye contact, an anxious and dysphoric mood, appropriate affect, normal speech, logical and goal directed thought process, no delusions, normal perceptions, fair

judgment, normal orientation, intact memory, fair concentration and insight, poor appetite, fair sleep, and below average IQ.  (Tr. 999-1001).

Also in October 2014, Dr. Trock completed a medical examination for employability assessment in which he opined that Sims is moderately limited in understanding, remembering, and carrying out instructions, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior, and functioning in a work setting at a consistent pace, and very limited in maintaining attention and concentration.  Dr. Trock wrote that Sims is "100% temporarily disabled" due to "major depression."  (Tr. 995-97).

### B. *Vocational Services Evidence*

In 2007 and 2010, Sims met with Bethanne Guest-Bergum, a vocational rehabilitation counselor, for Vocational and Educational Services for Individuals with Disabilities ("VESID").   Ms. Guest-Bergum determined that Sims meets the "Most Significant Disability" criteria and is limited in regard to communication, self-direction, work skills, and work tolerance.    Ms. Guest-Bergum helped Sims develop an Individualized Plan for Employment, but Sims did not follow through with the plan due to the birth of her son.  The plan was ended in May 2011.  (Tr. 785-829).

### C. *Administrative Hearing Testimony*

Born in 1989, Sims was twenty-five-years old at the time of the third administrative hearing.  (*See* Tr. 45).  Sims testified that she has an Individualized Education Program diploma and previously received VESID services.  (Tr. 52-53).  She previously applied for jobs at Panera Bread and Family Video, but she was told that she was not qualified for either position.  (Tr. 53).  She believes that she would have difficulty working because she

gets overwhelmed and has panic attacks.  (Tr. 53-54).  She feels stressed when given too much work at once because she cannot remember everything that needs to be done. (*Id.*).  She also has difficulty shifting from task to task and maintaining concentration (Tr. 54, 64), and it takes her longer than normal to understand things (Tr. 67).

Sims' day involves putting her son on a bus for his pre-kindergarten program, which runs from 8:45 a.m. until 2:45 p.m.  (Tr. 65-66).  Some days she cleans, runs errands, and attends appointments, while other days she just sleeps.  (Tr. 66).  She also attends counseling sessions at Horizon about once a week.  (Tr. 59).

Sims testified that she smokes marijuana to treat her pain every day or every other day.  (Tr. 69-70).  Her counselor is aware of her marijuana use and directed her to use no more than is necessary to help treat her pain.  (Tr. 76).  Sims drinks alcohol only "once in a blue moon."  (Tr. 70).  She previously attended substance abuse programs, but she was kicked out for non-attendance.  (Tr. 71).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §1382c(a)(3)(B).   The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  *Id.*  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."  *Id.* §416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.*  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first,

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 to subpart P of part 404 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ("RFC") based on all the relevant medical and other evidence" in the record.  *Id.* §416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §416.945(a)(1).   The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."   *Id.* §416.920(f).   If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §416.920(g)(1).   If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

If the record contains medical evidence of the claimant's drug addiction or alcoholism, the disability inquiry does not end with the five-step analysis, but, rather, if the claimant is found disabled, the Commissioner must determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the disability determination. *See* 42 U.S.C. §1382c(a)(3)(J); 20 C.F.R. §416.935(a); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012). The "critical question" under this inquiry is "whether [the Commissioner] would still find [the claimant] disabled if [she] stopped using drugs or alcohol." *Cage*, 692 F.3d at 123 (second and third alterations in original) (quoting 20 C.F.R. §416.935(b)(1)). The claimant bears the burden of proving that her drug addiction or alcoholism is not a contributing factor material to the determination of disability. *Id.* at 124.

III.    *ALJ Weir's Decision*

ALJ Weir followed the five-step analysis for evaluating disability claims. Under step one, the ALJ found that Sims has not engaged in substantial gainful activity since her September 15, 2008 SSI application date. (Tr. 21).[5] At step two, the ALJ concluded that Sims has the following severe impairments: substance abuse disorder, depressive disorder, anxiety disorder, and a learning disability. (*Id.*). The ALJ found at step three that if Sims stopped the substance use, her impairments would not meet or medically

---

[5]    The record indicates that Sims actually applied for SSI on September 17, 2008, not September 15, 2008. (Tr. 146).

equal the severity of one of the listed impairments.  (Tr. 23-25).  Before proceeding to

step four, the ALJ assessed Sims' RFC based upon her discontinuing her substance use:

> If the claimant stopped the substance use, the claimant would
> have the residual functional capacity to perform a full range of
> work at all exertional levels but with the following
> nonexertional limitations:  The claimant can perform SVP 2 or
> lower work (unskilled) with no reading above Dictionary of
> Occupational Title (DOT) level 1 (recognizing 2500 two or
> three syllable words), and no simultaneous conflicting task
> requiring judgment about best order of task.

(Tr. 26).  Proceeding to step four, the ALJ found that Sims has no past relevant work.  (Tr.

32).  At the fifth step, the ALJ considered Sims' age, education, work experience, RFC,

and the testimony of a vocational expert to conclude that if Sims discontinued her

substance use, she could perform jobs that exist in significant numbers in the national

economy, including Laundry Worker II and Dishwashing (Kitchen Porter).  (Tr. 32-33).  As

a result, the ALJ found that if Sims stopped her substance use, she could successfully

adjust to other work.  (Tr. 33).   The ALJ therefore concluded that Sims has not been

under a disability within the meaning of the Act since her SSI application date through the

date of his decision.  (Tr. 33-34).

   IV.   _Sims' Challenges_

       Sims challenges ALJ Weir's disability decision on three grounds:  (1) the ALJ failed

to adequately develop the record; (2) the ALJ failed to evaluate the reports prepared by

her vocational counselor, Bethanne Guest-Bergum; and (3) the ALJ violated the "treating

physician rule" by failing to explain why he gave only "some weight" to Dr. Trock's opinion

regarding her mental limitations.  (_See_ Dkt. No. 14-1 (Sims' Memo. of Law)).  The Court

will address each challenge in turn.

A. *Development of the Record*

Sims argues that the ALJ failed to develop the record by not obtaining her treatment notes from Horizon Health Services.

Given "the essentially non-adversarial nature of a benefits proceeding," the ALJ "must . . . affirmatively develop the record." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). Specifically, the ALJ must develop the claimant's "complete medical history" for at least the twelve months preceding the month in which the claimant filed his SSI application. 20 C.F.R. §416.912(b)(1). The ALJ's duty to develop the record applies even when the claimant is represented by counsel. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

Here, billing statements from Horizon indicate that Sims attended counseling there about forty times between June 2013 and December 2015, with about half of the counseling sessions taking place before the February 6, 2015 ALJ hearing. (Tr. 994, 1004). Although the record includes some documents from Horizon — namely, a discharge note, a mental health assessment, and a psychiatric medical exam (Tr. 926-27, 968-93, 999-1001) — it does not contain the treatment notes from the counseling sessions. ALJ Weir noted in his decision that Sims attended weekly counseling sessions at Horizon (Tr. 27 (*referring to* Tr. 59)), yet he seemingly did not try to obtain the treatment notes for these sessions. Had he done so, he may very well have reached a different disability decision. For example, he might have concluded that the notes fully support Dr. Trock's opinion regarding Sims' mental limitations (Tr. 995-97) and decided to give more weight to that opinion and less weight to the opinions of Dr. Baskin and Dr. Mangold. The ALJ might have also determined that the notes corroborate Sims' testimony that her

counselor at Horizon did not tell her to stop smoking marijuana (Tr. 76), thus causing the ALJ to modify his conclusions regarding Sims' substance abuse. Accordingly, for these reasons, this case should be remanded to the Commissioner to further develop the record by obtaining the missing Horizon treatment notes. *See Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3-4 (W.D.N.Y. Nov. 13, 2016) (remanding where it was "apparent" that the plaintiff's mental health treatment notes were missing from the record).

    B. *Vocational Services*

Sims next argues that the ALJ erred by ignoring the VESID reports prepared by her vocational rehabilitation counselor, Bethanne Guest-Bergum. Ms. Guest-Bergum opined in these reports that Sims meets the "Most Significant Disability" criteria and is limited in regard to communication, self-direction, work skills, and work tolerance.

A vocational rehabilitation counselor is a "nonmedical source" under the Commissioner's regulations. 20 C.F.R. §416.927(f); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). In evaluating the opinions of nonmedical sources, the ALJ should use the same factors that are used to evaluate the opinions of acceptable medical sources, including treating physicians. 20 C.F.R. §416.927(f)(1); SSR 06-03p, 2006 WL 2329939, at *5. The ALJ "generally should explain the weight given to [these opinions] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

Here, although ALJ Weir noted in his decision that Sims received VESID services (Tr. 26), he did not acknowledge or discuss Ms. Guest-Bergum's reports regarding those

services.  On remand, the ALJ should expressly consider Ms. Guest-Bergum's reports and explain what weight, if any, Ms. Guest-Bergum's opinions are entitled to.  *See Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 301 (W.D.N.Y. 2016) ("Even if the ALJ did consider [the vocational rehabilitation counselor's] assessment in issuing his decision, without his reasoning for assigning the assessment presumably little weight, the Court cannot effectively decide whether the determination is supported by substantial evidence.").

C.  *Dr. Trock's Opinion*

Sims also argues that ALJ Weir violated the treating physician rule by not explaining why he gave only "some weight" to Dr. Trock's October 2014 opinion that she is moderately limited in understanding, remembering, and carrying out instructions, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior, and functioning in a work setting at a consistent pace, and very limited in maintaining attention and concentration.

ALJ Weir could not have properly applied the treating physician rule to Dr. Trock's opinion because there was evidence missing from the record — namely, the Horizon treatment notes.  *See Velez v. Colvin*, No. 14 Civ. 3084(CS)(JCM), 2017 WL 1831103, at *17 (S.D.N.Y. May 5, 2017) (holding that an ALJ cannot properly apply the treating physician rule until he satisfies his duty to develop the record).  On remand, the ALJ should reapply the treating physician rule to Dr. Trock's opinion after developing the record with the missing Horizon notes.  In the event the ALJ gives Dr. Trock's opinion less than controlling weight, he should provide "good reasons" for whatever weight he assigns the opinion.  20 C.F.R. §416.927(c)(2).

## CONCLUSION

For the foregoing reasons, it is recommended that Sims' motion for judgment on the pleadings (Dkt. No. 14) be granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation. In addition, given that Sims' SSI application has now been pending nearly ten years, the Commissioner should decide Sims' application as expeditiously as possible on remand.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

   **SO ORDERED.**

Dated:    March 30, 2018
          Buffalo, New York

                         */s/ Michael J. Roemer*
                         MICHAEL J. ROEMER
                         United States Magistrate Judge